UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

MAINTENANCE DREDGING I, LLC                    CIVIL ACTION

VERSUS                                         NO. 22-1509

PAUL ANTHONY BILLIOT                           SECTION "B"(4)

<u>ORDER AND REASONS</u>

Before the Court are defendant Paul Billiot's motion to dismiss (Rec. Doc. 10) and plaintiff Maintenance Dredging I, LLC's opposition (Rec. Doc. 14). For reasons discussed below,

**IT IS ORDERED** that defendant's motion to dismiss (Rec. Doc. 10) is **DENIED**.

## I.   Facts and Cause of Action

On May 26, 2022, plaintiff Maintenance Dredging I, LLC ("MDI") filed for declaratory judgment against defendant Paul Anthony Billiot ("Billiot"). Rec. Doc. 1 at 1. Asserting federal admiralty and maritime jurisdiction pursuant to 28 U.S.C. § 1333, MDI alleged Billiot failed to accurately disclose his medical history before being injured on the defendant's vessel in the Mississippi River during his employment. *Id.* at 2 ¶ 6; 7 ¶ 21.

The incident occurred on January 18, 2022 near Chalmette, Louisiana. *Id.* at 2 ¶ 6. Following the incident, Billiot complained of injuries to his neck and lower back, with contemporaneous x-rays revealing "degenerative changes at L5-S1 and atherosclerotic disease but no fracture, subluxation, or spondylolisthesis." *Id.*

1

at 3 ¶ 10. Billiot's treating physician diagnosed him with lower back pain and prescribed an over-the-counter pain reliever and Epsom salts. *Id.*

Nearly two months later, defendant Billiot again complained of neck and lower back pain when he presented at another treatment facility. *Id.* at 3 ¶ 11. MRIs revealed three bulging cervical discs, one bulging lumbar disc, areas of cervical cord flattening, areas of neuroforaminal narrowing and stenosis, and a three-to-four-millimeter retrolisthesis. *Id.* at 3 ¶ 12. The treating physician recommended two epidural steroid injections and discussed with Billiot the possibility of a future procedure. *Id.* at 3-4 ¶ 12.

On the date Billiot presented for treatment at a second facility, MDI requested authorization to review defendant's medical history for pre-existing conditions. *Id.* at 4 ¶ 14. Billiot refused. *Id.* Consequently, MDI conducted an "independent investigation" and allegedly discovered records of previous back and neck injuries, including: a 2010 trauma from a large pipe falling onto his head; a 2013 MRI revealing bulging cervical discs and stenosis after being "pinned between the tires and the wheel well of an 18-Wheeler;" and a 2014 lumbar disc herniation. *Id.* at 5-6 ¶ 18. Throughout his 2021 hiring process, Billiot denied any previous injuries, any previous recommendations by physicians for

surgeries, and any previously conducted CAT scans or MRIs. *Id.* at 6-7 ¶¶ 19-20.

Since the January 18, 2022 incident, MDI has paid maintenance and cure benefits to Billiot. *Id.* at 2 ¶ 7. MDI brought a declaratory judgment suit to clarify "its obligations and duties," specifically a declaration that Billiot's injuries were "causally connected" to those previously suffered and that "MDI was in no way negligent or at fault for the injuries allegedly sustained." *Id.* at 8-9 ¶¶ 24, 26-27. Finally, MDI requested an opportunity for medical records discovery. *Id.* at 9 ¶ 28. At the time of MDI's suit, Billiot retained counsel but had not filed a complaint. *Id.* at 4 ¶ 13.

On June 22, 2022, Billiot filed this motion to dismiss the declaratory judgment suit and attached his state-court complaint against MDI and its insurer, which was also filed on the same day. Rec. Doc. 10; Rec. Doc. 10-2 (state petition). MDI responded in opposition to dismissal on July 12, 2022. Rec. Doc. 14.

## II.  Law and Analysis

### A. Declaratory Judgment Standard

To ascertain whether to decide or dismiss a federal declaratory judgment action, a district court applies the three-part *Orix* test: (1) whether the declaratory judgment action is justiciable; (2) whether the court has the authority to grant

declaratory relief; and (3) whether the court should exercise its broad discretion over the matter. *See Orix Credit Alliance, Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). This three-prong test similarly applies to a defendant's motion to dismiss. *See Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 387-88 (5th Cir. 2003).

The first *Orix* element considers justiciability when there is "a case of actual controversy." 28 U.S.C. § 2201(a). That is, district courts evaluate a case for its ripeness. *See Orix Credit All., Inc.*, 212 F.3d at 895. The Fifth Circuit has described declaratory judgment ripeness as including issues that present "purely legal" questions and are not "abstract or hypothetical" nor need "further factual development." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 833 F.2d 583, 586-87 (5th Cir. 1987). Further, ripeness demands a showing of plaintiff hardship. *Cent. & S. W. Servs., Inc. v. U.S. E.P.A.*, 220 F.3d 683, 690 (5th Cir. 2000).

In this case, Billiot makes no specific ripeness argument. *See* Rec. Doc. 10-1 at 3. The Court, therefore, interprets his stand-alone "premature" reference in the introduction of his motion as an argument related to the third *Orix* prong. *See id.* at 1. Further, evident by Billiot's state-court suit, this matter is neither abstract nor hypothetical. *See id*. We agree with MDI that its motion presents a legal question over which a federal court exercises jurisdiction through maritime law, generally, and a

4

purported *McCorpen* defense, specifically. *See* Rec. Doc. 14 at 7-9. Accordingly, MDI's maintenance and cure obligation presents sufficient hardship. *See id.* at 3-6.

The Court also possesses authority to grant declaratory relief, meeting the second prong of *Orix*. Federal district courts have original jurisdiction over *in personam* admiralty or maritime claims. 8 U.S.C. § 1333(1). However, this jurisdiction is subject to the saving to suitors exception: "saving to suitors in all cases all other remedies to which they are otherwise entitled." *Id.* Even so, these nonmaritime, common law remedies are merely preserved for plaintiffs. *Poirrier v. Nicklos Drilling Co.*, 648 F.2d 1063, 1066 (5th Cir. 1981). The saving to suitors clause "does not guarantee them a nonfederal forum." *Id.* Here, the Court has original jurisdiction through 8 U.S.C. § 1333, presenting no issue to its consideration of the declaratory judgment.

The final *Orix* prong, whether the Court should exercise discretion over a matter, necessitates a careful and fact-driven analysis. Federal courts possess "unique and substantial discretion" over declaratory judgment actions. *Wilton v. Seven Falls Co.*, 515 U.S. 277, 286 (1995). The Court's discretion is broad but "not unfettered," *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993), and never founded on "the basis of whim or personal disinclination," *Hollis v. Itawamba Cnty. Loans*, 657 F.2d 746, 750 (5th Cir. 1981).

Further, the Court must weigh on the record the purposes of the Declaratory Judgment Act against relevant abstention factors. *Travelers Insurance Company*, 996 F.2d at 778.

The Fifth Circuit has described relevant, non-exclusive factors, as part of the final *Orix* prong:

1) whether there is a pending state action in which all of the matters in controversy may be fully litigated,

2) whether the plaintiff filed suit in anticipation of a lawsuit filed by the defendant,

3) whether the plaintiff engaged in forum shopping in bringing the suit,

4) whether possible inequities in allowing the declaratory plaintiff to gain precedence in time or to change forums exist,

5) whether the federal court is a convenient forum for the parties and witnesses, and

6) whether retaining the lawsuit in federal court would serve the purposes of judicial economy.

*St. Paul Ins. Co. v. Trejo*, 39 F.3d 585, 590-91 (5th Cir. 1994).

The first *Trejo* factor addresses "the proper allocation of decision-making between state and federal courts." *Sherwin-Williams Co. v. Holmes Cnty.*, 343 F.3d 383, 390 (5th Cir. 2003). Although MDI makes much of the fact that Billiot filed the state court action the same day he filed his motion to dismiss, and that the action was incorrectly filed in St. Martin Parish, neither is

6

dispositive. Rec. Doc. 14 at 11. Courts in this district view the first factor as neutral when a defendant has yet to file any state court action. *See Coastal Drilling Co., LLC v. Creel*, No. 17-188, 2017 WL 1234207, at *2 (E.D. La. Apr. 4, 2017); *GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *2 (E.D. La. Sept. 26, 2012); *Offshore Liftboats, L.L.C. v. Bodden*, No. 12-700, 2012 WL 2064496, at *2 (E.D. La. June 7, 2012). As both parties acknowledge Billiot filed his state court proceedings in St. Martin Parish, even assuming it to be the incorrect venue, the first *Trejo* factor is neutral. Rec. Doc. 10-1 at 4; Rec. Doc. 14 at 11.

The second and third *Trejo* factors examine a plaintiff's motivation for a suit and forum shopping. *See Specialty Diving of Louisiana, Inc. v. Mahoney*, No. 05-1202, 2006 WL 4101325, at *3 (E.D. La. Jan. 31, 2006). When a court perceives suit motivation as merely winning the race to the courthouse, dismissal is in order. *See Rowan Companies, Inc. v. Blanton*, 764 F. Supp. 1090, 1092 (E.D. La. 1991). However, declaratory judgment actions have been retained when medical facts discovered call into question the maintenance and cure obligation. *See Adriatic Marine, LLC v. Harrington*, 442 F. Supp. 3d 929, 935 (E.D. La. 2020), *aff'd sub nom. Adriatic Marine, L.L.C. v. Harrington*, 834 F. App'x 124 (5th Cir. 2021); *Atl. Sounding Co. Inc. v. Petrey*, No. 06-9688 S4, 2010 WL 1403960, at *1 (E.D. La. Mar. 31, 2010), *aff'd*, 402 F. App'x

939 (5th Cir. 2010). Here, MDI alleges discovery of significant, nondisclosed medical facts precipitating its suit. *See* Rec. Doc. 1 at 8 ⁋ 25. To the extent the declaratory judgment requests clarity on the maintenance and cure obligation, the Court finds that requests and case law support the validity of that request.

As to the fourth factor concerning inequities, the Court disagrees with Billiot's reading of *Fitzgerald*. As both parties acknowledge, "a maintenance and cure claim joined with a Jones Act claim must be submitted to the jury when both arise out of one set of facts." *Fitzgerald*, 374 U.S. at 21. Yet, here, MDI's *McCorpen* defense implicates Billiot's alleged fraudulent medical statements during his hiring process, a separate set of facts from those surrounding Billiot's alleged accident. Rec. Doc. 14 at 19. The fourth factor does not weigh in favor of dismissal.

The fifth factor of convenience again does not weigh in favor of dismissal. Though Billiot conclusory asserts this factor is "essentially neutral," Rec. Doc. 10-1 at 6, it fails to consider how the location of the alleged incident coupled with the location of MDI's registered office make this Court convenient for both parties. Rec. Doc. 14 at 19.

Concerning the sixth factor, whether retaining the suit would serve the purpose of judicial economy, the Court finds this factor does not weigh in favor of dismissal. Although, "judicial economy is better served by one court hearing all of

8

the matters arising out of one set of facts," *GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012), that is not the case here as MDI alleged its *McCorpen* defense, which implicates two separate sets of facts. Rec. Doc. 1 at 7 ¶ 21; Rec. Doc. 14 at 3-6.

Taken as a whole, the *Trejo* factors do not outweigh the significant discoveries of Billiot's medical history. Restricted to the facts pled before us, the Court fails to find sufficient reason to dismiss the action. Such a conclusion is in line with precedent in this district and an application of our broad discretion in evaluating declaratory judgments.

**A. Declaratory judgments in maritime cases**

Maritime caselaw informs the general declaratory judgment standard. In the Eastern District of Louisiana, it is a "well-established practice . . . to dismiss preemptive declaratory judgment actions in maritime personal injury cases." *Coastal Drilling Co., LLC v. Creel*, No. 17-188, 2017 WL 1234207, at *3 (E.D. La. Apr. 4, 2017) (citing *Torch, Inc. v. Leblanc*, 947 F.2d 193, 195 (5th Cir. 1991); *GlobalSantaFe Drilling Co. v. Quinn*, No. 12-1987, 2012 WL 4471578, at *4 (E.D. La. Sept. 26, 2012); *Offshore Liftboats, L.L.C. v. Bodden*, No. 12-700, 2012 WL 2064496, at *2 (E.D. La. June 7, 2012).

However, when courts have found a viable *McCorpen* defense, declaratory relief to employers has been extended. *See Adriatic*

*Marine, LLC v. Harrington*, 442 F. Supp. 3d 929, 936-38 (E.D. La. 2020), *aff'd sub nom. Adriatic Marine, L.L.C. v. Harrington*, 834 F. App'x 124 (5th Cir. 2021); *All. Marine Servs., LP v. Youman*, No. 17-8124, 2018 WL 6523134, at *8 (E.D. La. Dec. 12, 2018); *Atl. Sounding Co. Inc. v. Petrey*, No. 06-9688, 2010 WL 1403960, at *3 (E.D. La. Mar. 31, 2010), *aff'd*, 402 F. App'x 939 (5th Cir. 2010) ; *Cenac Marine Servs., LLC v. Clark*, No. 16-15029, 2017 WL 1079181, at *5 (E.D. La. Mar. 22, 2017); *Atl. Sounding Co. v. Vickers*, 782 F. Supp. 2d 280, 287-88 (S.D. Miss.), *aff'd*, 454 F. App'x 343 (5th Cir. 2011).

Given this practice, the Court thus considers MDI's raised *McCorpen* contentions.

## B. *McCorpen* defense

When an employed seaman "intentionally misrepresents or conceals material medical facts" during the hiring process, an employer may defend itself from the obligation of maintenance and cure. *See McCorpen v. Cent. Gulf S. S. Corp.*, 396 F.2d 547, 549 (5th Cir. 1968). Originating in the middle ages, an injured seaman has a right to maintenance and cure, "a small daily stipend to pay for food, lodging, and basic medical care." *Boudreaux v. Transocean Deepwater, Inc.*, 721 F.3d 723, 725 (5th Cir. 2013). This right is nearly unqualified, immune from contractual stipulations, does not depend on the fault of the employer, and is unaffected by employee contributory negligence. *See id.* at 725-26.

10

Despite this broad remedy, employers possess safeguards against potential fraud. That is, "an employer is entitled to investigate a claim for maintenance and cure before tendering any payments to the seaman." *Id.* at 728. Based on its investigation, employers may raise a *McCorpen* defense to terminate its obligation, upon a showing of fraudulent behavior by the seaman. *Id.*

The Fifth Circuit has clarified that employers asserting a *McCorpen* defense must show:

> (1) the claimant intentionally misrepresented or concealed medical facts;
>
> (2) the non-disclosed facts were material to the employer's decision to hire the claimant; and
>
> (3) a connection exists between the withheld information and the injury complained of in the lawsuit.

*Brown v. Parker Drilling Offshore Corp.*, 410 F.3d 166, 171 (5th Cir. 2005) (citing *McCorpen*, 396 F.2d at 548-49).

**1. Concealment**

For the first factor of whether the claimant intentionally misrepresented or concealed medical facts, the Fifth Circuit standard is "essentially an objective inquiry," generally avoiding an assessment of the seaman's subjective intent and credibility. *See id.* at 174-75. The seaman is not required to make a disclosure of unrequested information, but misrepresentation or concealment of facts on a pre-hiring medical examination or questionnaire place

the maintenance and cure benefits at risk. *See Jauch v. Nautical Servs., Inc.*, 470 F.3d 207, 212 (5th Cir. 2006). MDI asserts Billiot was asked to complete an employment questionnaire inquiring about any pre-existing medical conditions or disabilities during the hiring process, and Billiot denied any and all past medical conditions, restrictions, and recommendations for surgery. *See* Rec. Doc. 1 at 6-7 ¶ 19. Additionally, Billiot was also sent for a preemployment physical and drug screening at Prime Occupational Medicine, where he was specifically asked whether he ever had an injury or illness, whether he received treatment for those injuries, and whether he ever had a CT, CAT Scan, or MRI among other questions. *Id.* at 7 ¶ 20. Billiot again denied any previous injury and treatment, verifying his response in the process. *Id.* Billiot offers no facts that would contradict MDI's assertions. Rec. Doc. 11 at 4 ¶¶ 19-21 (defendant answer) (denying plaintiff's contentions "for lack of a sufficient basis to justify a belief therein").

### 2. Materiality

The second *McCorpen* prong evaluates the materiality of the non-disclosure. The Fifth Circuit again emphasizes the objectivity of its analysis, providing the commonplace example: "The fact that an employer asks a specific medical question on an application, and that the inquiry is rationally related to the applicant's physical ability to perform his job duties, renders the information

material for the purpose of this analysis." *Brown*, 410 F.3d at 175. Here, the questions MDI presented in its pre-hiring questionnaire rationally relate to work on tugboats and dredges. *See* Rec. Doc. 1 at 7 ¶ 20 (seeking information on any previous treatment or diagnoses related to spine, knee, or shoulder pain). MDI claims such information would have affected its hiring considerations. *Id.* at 7 ¶ 23. Billiot again offers only a conclusory denial of MDI's claim. *See* Rec. Doc. 11 at 4 ¶ 20.

### 3. Causality

Finally, to prove *McCorpen*'s connection prong, an employer is merely required to put forward "any 'causal link' between the seaman's present injury and a concealed pre[e]xisting disability" to bring suit. *Boudreaux*, 721 F.3d at 728. This measure does not require proof that the pre-existing injuries were the "sole causes" or that the current injury is "identical" to what was suffered previously. *Brown*, 410 F.3d at 176. For the causal-link factor, the Fifth Circuit has carefully distinguished the requirements for the *McCorpen* defense of maintenance and cure from the evaluation of a seaman's negligence claim. *See Johnson v. Cenac Towing, Inc.*, 544 F.3d 296, 303-04 (5th Cir. 2008) (noting that concealment of a pre-existing injury may open a seaman to a contributory negligence defense but does not bar a Jones Act negligence claim). An injury to the same body area is sufficient for the *McCorpen* causality link, and to bar maintenance and cure recovery. *See*

*Adriatic Marine, LLC*, 442 F. Supp. 3d at 937-38. Here, MDI alleges Billiot experienced numerous pre-existing traumas to his lower back and neck. *See* Rec. Doc. 1 at 5-6 ¶ 18. These are the same areas Billiot now complains of. *See* Rec. Doc. 10-1 at 2. And again, Billiot offers no substantive rebuttable to MDI's allegations. Rec. Doc. 11 at 4 ¶ 18 (denying plaintiff's contentions "for lack of a sufficient basis to justify a belief therein").

MDI's petition is more than sufficient to survive a motion to dismiss on *McCorpen* grounds. While seemingly ripe for summary disposition on undisputed facts, we will allow focused discovery to proceed on relevant medical history and objective considerations.

New Orleans, Louisiana this 3rd day of October, 2022

_____

SENIOR UNITED STATES DISTRICT JUDGE